United States District Court
Southern District of Texas

**ENTERED**

September 29, 2017

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| MARIA DE JESUS GALEANA SANCHEZ, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 7:16-CV-00445 |
| GLORIA DE LOS ANGELES TREVINO RUIZ, *et al*, | § § § | |
| Defendants. | § § | |

## OPINION

The Court now considers Maria De Jesus Galeana Sanchez's ("Plaintiff") motion for partial summary judgment,[1] as well as Gloria De Los Angeles Trevino Ruiz ("Trevino"), Armando Gomez ("Armando"), and Amelia Gomez's ("Amelia") (collectively "Defendants") response.[2] After duly considering the record and relevant authorities, the Court **DENIES** the motion.

### I.   BACKGROUND

Defendants in this case are all related. Trevino is a professional entertainer.[3] Armando is Trevino's husband and manager, and Amelia is Armando's mother and thus Trevino's mother-in-law.[4] Although Trevino travels the world,[5] she also has, or at least had, a residence in McAllen, Texas.[6] Amelia allegedly lived at this particular residence.[7]

---

[1] Dkt. No. 23.
[2] Dkt. No. 30.
[3] Dkt. No. 8 ¶ 4.
[4] Dkt. No. 5 ¶ 1; Dkt. No. 8 ¶ 4.
[5] Dkt. No. 8 ¶ 4 (including internet link showing that Trevino has concerts in at least fourteen major U.S. cities during 2017); Dkt. No. 25 ¶ 2 (indicating Trevino needed an extension of time to respond to Plaintiff's motion for summary judgment because Trevino was in Europe).
[6] Dkt. No. 1 ¶ 6.
[7] *Id.* ¶ 10.

1 / 21

Plaintiff was hired as Defendants' domestic servant to perform duties such as cooking and cleaning.[8] She "began working for [Armando] in Acapulco, Mexico, and, later on, for [Trevino] in Mexico City, Mexico."[9] Thereafter, "Plaintiff moved to the U.S. with Defendants to continue working in their home [in McAllen]."[10] To make this transition possible, Trevino and Armando "obtained a visa for Plaintiff . . . to come to the United States . . . ."[11] Plaintiff's partial summary judgment motion includes a contract specifying the terms of Plaintiff's employment.[12]

Plaintiff alleges that she stopped working approximately six months after transitioning to the United States due to the working conditions and pay.[13] In particular, she alleges she worked approximately one-hundred and twenty hours per week,[14] but was only paid "five thousand Mexican pesos [approximately $180.00][15] bi-weekly,"[16] "well under the federal minimum wage,"[17] and without any overtime. Plaintiff also alleges that Defendants confiscated her passport to prevent her from leaving.[18]

Plaintiff filed suit in federal court on May 17, 2017,[19] alleging violations of the Fair Labor Standards Act ("FLSA"), breach of contract or alternatively quantum meruit and unjust enrichment, as well as violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA").[20] However, Plaintiff had great difficulty effectuating service upon Defendants.[21]

---

[8] Dkt. No. 23-2 p. 33.
[9] Dkt. No. 23 p. 1.
[10] Id.
[11] Dkt. No. 1 ¶ 13.
[12] Dkt. No. 24-1.
[13] Dkt. No. 1 ¶ 13 (indicating that Plaintiff worked in the United States from October 2013 until April 2014).
[14] Id. ¶ 16.
[15] Dkt. No. 23 p. 2.
[16] Dkt. No. 1 ¶ 15.
[17] Dkt. No. 23 p. 2.
[18] Dkt. No. 1 ¶ 43.
[19] Dkt. No. 1.
[20] Id. pp. 4–6.
[21] See Dkt. Nos. 5 & 8.

The record suggests that at least one Defendant intentionally evaded service.[22] The Court granted Plaintiff's motion for alternative service and also granted an extension of time to serve Defendants.[23] Defendants finally answered six months after Plaintiff's complaint was filed.[24]

Plaintiff apprised the Court in the joint discovery case management plan that she needed to amend her complaint to correctly name Defendant Amelia—whose true name is Alisa Amalia Martinez Gonzalez.[25] Plaintiff also noted during the initial pretrial conference that her amended complaint would omit one of her original claims. Plaintiff orally moved to amend during the initial conference, and the Court granted the motion, setting a deadline of January 20, 2017 to file her amended complaint. Plaintiff never filed an amended complaint, and thus never properly named Amelia nor dropped any original claim.

Plaintiff filed the instant motion for partial summary judgment on her FLSA and breach of contract claims, *but not* on her TVPRA claim.[26] She does not raise quantum meruit or unjust enrichment.[27] Defendants timely responded, rendering the instant motion ripe for review. The Court now turns to its analysis.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] "A fact is 'material' if its resolution could affect the outcome of the action,"[29] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-

---

[22] *See* Dkt. No. 12 p. 3.
[23] Dkt. Nos. 9 & 12.
[24] See Dkt. No. 16.
[25] Dkt. No. 17 ¶ 7. For purposes of consistency, the Court continues to reference Ms. Gonzalez as "Amelia."
[26] Dkt. No. 23 pp. 3–11.
[27] *Id*.
[28] Fed. R. Civ. P. 56(a).
[29] *Burrell v. Dr. Pepper/Seven UP Bottling Grp.*, Inc., 482 F.3d 408, 411 (5th Cir. 2007) (internal quotation marks and citation omitted).

movant."[30] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[31]

The movant bears the initial burden of showing the absence of a genuine issue of material fact.[32] In this showing, "bald assertions of ultimate facts" are insufficient.[33] Absent a sufficient showing, summary judgment is not warranted, the analysis is ended, and the non-movant need not defend the motion.[34] If the movant meets its initial burden, then the burden shifts to the non-movant, who must then demonstrate the existence of a genuine issue of material fact.[35] This demonstration must specifically indicate facts and their significance,[36] and cannot consist solely of "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation[.]"[37]

In conducting its analysis, the Court considers evidence from the entire record and views that evidence in the light most favorable to the non-movant.[38] Thus, although the Court refrains from determinations of credibility and evidentiary weight, the Court nonetheless gives credence to all evidence favoring the non-movant; on the other hand, regarding evidence that favors the movant, the Court gives credence to evidence that is uncontradicted and unimpeachable, but disregards evidence the jury is not required to believe.[39] Rather than combing through the record on its own, the Court looks to the motion for summary judgment and response to present the

---

[30] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citation omitted).

[31] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[32] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[33] *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978) (citation omitted).

[34] *See Celotex Corp.*, 477 U.S. at 323.

[35] *Id.*

[36] *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[37] *U.S. ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 337 (5th Cir. 2008) (citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).

[38] *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (citations omitted).

[39] *See id.*

evidence for consideration.[40] Parties may cite to any part of the record, or bring evidence in the motion and response.[41] By either method, parties need not proffer evidence in a form admissible at trial,[42] but must proffer evidence substantively admissible at trial.[43]

### III.   ANALYSIS

The Court must address preliminary matters defining the scope of its analysis.

### A.   *Duplicate response*

The Court observes that Defendants filed two responses. The first is identical to the second, except that it fails to attach any evidence.[44] Consequently, the Court **STRIKES** docket number twenty-nine as duplicative, and only analyzes Defendants' second response, which attaches evidence.

### B.   *Evidentiary objections*

To support her motion, Plaintiff attaches—among other things—a "statement of undisputed facts,"[45] her personal declaration,[46] and an English translation of Plaintiff's contract with Defendants.[47] Defendants object that these three documents are substantively inadmissible, and thus should be ignored for purposes of the present motion.[48] The Court addresses each document in turn.

---

[40] *See* Fed. R. Civ. P. 56(e).
[41] *See* Fed. R. Civ. P. 56(c).
[42] *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").
[43] *See Bellard*, 675 F.3d at 460 ("[T]he evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial.").
[44] *Compare* Dkt. Nos. 29 & 30.
[45] Dkt. No. 23-2 pp. 4–7.
[46] *Id.* pp. 9–11.
[47] *See* Dkt. Nos. 24 & 27.
[48] Dkt. No. 30 ¶¶ 1–6.

> ### i.     *Statement of "undisputed" facts*

Plaintiff attaches an unsigned "statement of undisputed facts" to her motion.[49] The Court can only infer that Plaintiff's counsel drafted this document. The majority of the statements are factual characterizations of the evidence accompanied by citations to actual evidence, while other statements are naked legal conclusions or factual assertions without citation to any evidence. Rule 56(c) provides that for purposes of summary judgment, a court may consider "admissions."[50] Case law makes clear that unsworn statements, if properly objected to, may not be considered for summary judgment purposes.[51] Here, Defendants object to Plaintiff's "statement of undisputed facts."[52] Thus, it is not a proper object of consideration for the present motion under Rule 56(c). Defendants' objection is **SUSTAINED** and Plaintiff's statement of "undisputed facts" is hereby **STRICKEN**.

> ### ii.    *Plaintiff's declaration*

Plaintiff also attaches a declaration under penalty of perjury which is written in English.[53] However, Plaintiff—who required a Spanish translator during her deposition—testified in Spanish that she only understands "a little" English.[54] When asked if she could read English, Plaintiff answered in Spanish: "very little. I prefer Spanish."[55] Thus, the question arises: how could Plaintiff have written a declaration in near-perfect English when she could barely speak or

---

[49] *See* Dkt. No. 23-2 p. 7.

[50] Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), *admissions*, interrogatory answers, or other materials . . . .") (emphasis added).

[51] *Otterstatter v. Peterson*, 37 F.3d 633 (5th Cir. 1994) ("Neither his 'affidavit for warrant of arrest' nor his 'statement of undisputed facts' were sworn. Although this court may consider documents on summary judgment that are unsworn or otherwise do not meet the requirements of rule 56, we may not do so if the opposing party objects. Otterstatter raised an objection that is sufficient to remove from our consideration all unsworn or certified materials submitted by Peterson.").

[52] *See* Dkt. No. 30 ¶¶ 1–2.

[53] *See* Dkt. No. 23-2 pp. 9–11.

[54] Dkt. No. 30-10 p. 3.

[55] *Id.* p. 25.

read any of the English language? The only reasonable answer is that the declaration was translated—most likely by Plaintiff's attorney.

The Fifth Circuit has held that a translator is generally just a language conduit, and thus his translations do not constitute hearsay.[56] However, a translator may be more than a mere conduit, in which case, the translation constitutes substantively inadmissible hearsay.[57] Factors to consider include: "(1) which party supplied the interpreter; (2) whether the interpreter had any motive to mislead or distort; (3) the interpreter's qualifications and language skill; and (4) whether actions taken subsequent to the conversation were consistent with the statements as translated."[58] Case law suggests that the burden of proof rests upon the party who sets forth the evidence for consideration.[59]

Here, these factors weigh in favor of finding that the translator was more than a mere conduit. Although Plaintiff fails to explain who translated her declaration, as previously noted, it is most likely that Plaintiff's attorney drafted the document, thus effectively functioning as the translator. Even if Plaintiff's attorney did not translate the declaration, with regard to the *first* element, Plaintiff likely supplied a translator with a built-in incentive to translate in a manner most favorable to Plaintiff. The *second* element—motive to mislead or distort—is neutral at best, and if anything, works against Plaintiff who likely supplied the interpreter.

Since the Court does not know with certainty the individual that interpreted Plaintiff's declaration, it is impossible to analyze the *third* element—the interpreter's qualification and language skill. However, insofar as Plaintiff's attorney may have been the translator, the Court

---

[56] *United States v. Cordero*, 18 F.3d 1248, 1253 (5th Cir. 1994) ("Except in unusual circumstances, an interpreter is no more than a language conduit and therefore does not create an additional level of hearsay.").
[57] *Cruz v. Aramark Services*, Inc., 213 Fed. Appx. 329, 334 (5th Cir. 2007).
[58] *Id*. (quoting *United States v. Martinez-Gaytan*, 213 F.3d 890, 892 (5th Cir.2000)).
[59] *See Gonzalez v. Lopez*, 2008 WL 323150, at *6 (N.D. Tex. Jan. 23, 2008), report and recommendation adopted in part, 2008 WL 323147 (N.D. Tex. Feb. 6, 2008); *see also Diaz v. Carballo*, 2007 WL 2984663, at *4 (N.D. Tex. Oct. 12, 2007).

has not been supplied with any evidence of his qualifications. Under these circumstances, the Fifth Circuit and district courts have specifically found an attorney's translation inadmissible.[60] Finally, the *fourth* element does not appear to have any application in the present context.

Overall, the available evidence suggests that Plaintiff's declaration was translated by more than a mere language conduit. Thus, Plaintiff's declaration constitutes inadmissible hearsay, and no hearsay exception obviously applies. The declaration is hereby **STRICKEN**.

### iii.    *English translation of Spanish contract*

Plaintiff's motion for partial summary judgment was accompanied by a contract written in Spanish,[61] but Plaintiff later moved to supplement her motion with an English translation of the contract.[62] The Court granted the motion,[63] and now Defendants move to strike the translated contract, employing logic similar to that in the previous section.[64] Specifically, Defendants point out that the translator's credentials—the third factor of the conduit test—are unknown, and thus Defendants contend that the translator is more than a mere conduit.[65] Consequently, Defendants argue the translated contract constitutes inadmissible hearsay and should be stricken.

For reasons that will become clear later in this opinion, Defendants' motion to strike does not affect the outcome of Plaintiff's motion for summary judgment. Plaintiff's motion makes clear that the import of the employment contract is to provide an additional basis—above and

---

[60] *Cruz*, 213 Fed. Appx. at 334 ("When applied to the facts of this case, these four factors suggest that the plaintiffs' attorney should not be treated as a "mere conduit." He was acting on behalf of the plaintiffs, and he had a potential motive to distort the translation in his clients' favor. More importantly, the court has no indication of his skill as a translator, other than from his own self-supporting claims."); *Gonzalez*, 2008 WL 323150, at *6, report and recommendation adopted in part, 2008 WL 323147 (N.D. Tex. Feb. 6, 2008); *see also Diaz*, 2007 WL 2984663, at *4.
[61] Dkt. No. 23-2 pp. 45–46.
[62] Dkt. No. 24.
[63] Dkt. No. 27.
[64] Dkt. No. 30 ¶¶ 5–6.
[65] Dkt. No. 30 ¶¶ 5–6.

beyond the FLSA—for recovery of unpaid minimum and overtime wages.[66] However, even *assuming in Plaintiff's favor* that the contract provides for minimum and overtime wages, genuine issues of material fact exist in this case with regard to the number of hours Plaintiff worked and the wages she was paid. For this reason, Plaintiff's motion for summary judgment with regard to her breach of contract claim would be denied regardless of whether the English translation of her contract with Defendants was stricken. Consequently, the Court **DENIES AS MOOT** Defendants' motion to strike the English translation of Plaintiff's contract.

C.    *FLSA—minimum wage & breach of contract*

While it is clear that Plaintiff wishes to recover unpaid minimum wage under the FLSA,[67] it is unclear whether she is seeking to recover unpaid overtime under the FLSA. Insofar as Plaintiff's FLSA claim can be construed as one for unpaid overtime wages, Plaintiff's motion for summary judgment must be and is **DENIED** because the FLSA overtime provision is categorically inapplicable in the domestic servant context.[68]

With respect to the FLSA claim for minimum wage, Plaintiff's motion for summary judgment must be denied for at least three reasons. *First*, there exists a genuine issue of material fact with regard to whether the alleged FLSA violation was willful, and thus, whether the claim is effectively barred by the FLSA statute of limitations. *Second*, there exists a genuine issue of material fact with regard to the number of hours Plaintiff worked per week, the amount of money she was paid per week, and consequently, whether she was ultimately paid minimum wage.

---

[66] *See* Dkt. No. 23 p. 10 ("Defendant Trevino Ruiz breached her contract with Plaintiff. Defendant contracted to pay Plaintiff the federal minimum hourly wage of $7.25. Plaintiff's salary never approached this level."); *Id*. p. 11 ("Defendant also breached her promise to pay Defendant 150% of the federal minimum wage for each hour she worked past 40 hours every week. As noted above, Plaintiff received the equivalent of 5,000 Mexican pesos each week, regardless of the hours she put in.").

[67] *See* Dkt. No. 23 ¶ 23 (expressly referencing the FLSA's overtime provision); *but see id*. ¶ 25 (only requesting minimum wages for Defendants' alleged FLSA violations).

[68] 29 U.S.C.A. § 213(b)(21) (West).

*Third*, there exists a genuine issue of material fact with regard to whether Amelia was Plaintiff's "employer" for FLSA purposes.

### i.   *statute of limitations*

*Legal Standard*

The FLSA statute of limitations is two years, unless the violation in question is willful, in which case it is three.[69] Here, Plaintiff's minimum wage claim accrued at the very latest when she quit her job on April 26, 2014.[70] This was more than two years before she filed suit on May 17, 2016.[71] Consequently, Plaintiff's FLSA claim is barred by the two-year statute of limitations unless Defendants' alleged minimum wage violation was willful, thus extending the limitations period to three years. Whether an FLSA violation was willful is a question of fact that can bar summary judgment.[72]

Willfulness occurs where the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."[73] The focus is on whether the conduct in question is "voluntary, deliberate, and intentional."[74] Thus, willfulness exists when employers "know their pay structures violate the FLSA or ignore complaints brought to their attention."[75]

---

[69] *Id.* ("[An FLSA claim] may be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.").
[70] Dkt. No. 30-1 ¶ 24.
[71] Dkt. No. 1.
[72] *Mohammadi v. Nwabuisi*, 605 Fed. Appx. 329, 333 (5th Cir. 2015) ("[G]enuine disputes of material fact exist for the issue of willfulness. Accordingly, whether the three-year-limitations period applies must be resolved by trial.").
[73] *Id.* at 332 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).
[74] *Alanis v. Tracer Indus. Mgmt. Co., Inc.*, 2016 WL 7551073, at *12 (E.D. Tex. Aug. 1, 2016) (citing *McLaughlin*, 486 U.S. at 135), report and recommendation adopted as modified, 2016 WL 4371535 (E.D. Tex. Aug. 16, 2016).
[75] *Mohammadi,* 605 Fed. Appx. at 332.

By contrast, "[n]either knowledge of the FLSA's potential applicability nor negligent or unreasonable conduct necessarily establishes willfulness."[76] Consequently, an employer that "act[s] without a reasonable basis for believing that it was complying with the [FLSA] is merely negligent, as is an employer that, without prior notice of an alleged violation, fails to seek legal advice regarding its payment practices."[77] Importantly, "the *employee* has the burden of demonstrating willfulness for the three-year limitations period to apply."[78]

*Analysis*

As an initial matter, the existence of a *violation* is a necessary logical predicate to any *willful violation*. For reasons that will become clear in the next section, there exists a fact issue on whether any Defendants violated the FLSA minimum wage requirement. For this reason alone, there necessarily also exists a fact issue on whether Defendants committed a willful FLSA violation.

Plaintiff also fails to carry her burden of establishing that no genuine issue of material fact exists on the issue of willfulness. Plaintiff notes that *Trevino in particular* "showed reckless disregard of the FLSA by failing to maintain records and failing to investigate whether Plaintiff was paid for all federally mandated minimum wage."[79] However, courts have specifically held that the failure to keep adequate records only amounts to negligence.[80] Moreover, Plaintiff cites no cases, and the Court can find none, suggesting that failure to adequately ensure FLSA

---

[76] *Id.*
[77] *Id.*
[78] *Id.* ("emphasis added").
[79] Dkt. No. 23 p. 9.
[80] *Alex v. KHG of San Antonio, L.L.C.*, 2014 WL 12489604, at *17 (W.D. Tex. June 13, 2014), report and recommendation adopted sub nom. *Alex v. KHG of San Antonio, LLC*, 2014 WL 12488582 (W.D. Tex. June 30, 2014) ("[E]stablishing that an employer was negligent with respect to its statutory requirements under the FLSA, *such as by failing to keep accurate records of actual hours worked*, is generally insufficient to establish willfulness.") (emphasis added) (citing *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990)); *Alanis,* 2016 WL 7551073, at *12 (holding that the defendant did not act with reckless disregard even though Plaintiff alleged that defendant failed to keep accurate records of hours worked).

compliance automatically translates into a "willful" violation. The available evidence here suggests otherwise. Trevino puts forth evidence that she:

- depended upon her husband to manage Plaintiff's employment,[81]

- never received any complaints from Plaintiff regarding Plaintiff's hours or pay,[82]

- would have paid any owed money if apprised,[83]

- believed that Plaintiff was paid more than she was owed,[84] and

- always intended to pay Plaintiff minimum wage.[85]

In light of this evidence, any violation of the FLSA by Trevino was negligent, not "voluntary, deliberate, and intentional."[86] Thus, a three-year statute of limitations cannot stem from the nature of Trevino's alleged FLSA violation.

Plaintiff fails to contend or put forth any evidence that Armando or Amelia willfully violated the FLSA. Moreover, the available evidence does not suggest that any such violation would have been "voluntary, deliberate, and intentional."[87] Consequently, Plaintiff has failed to carry her affirmative burden to establish a willful violation by Defendants, and thus the Court cannot definitively conclude that the statute of limitations for Plaintiff's FLSA claim is for three years, rather than two. In sum, summary judgment on the FLSA claim cannot be granted because there is a fact issue regarding willfulness, and Plaintiff's claim is thus potentially time-barred. Thus, Plaintiff's motion for summary judgment on her FLSA claims is **DENIED**.

---

[81] *See e.g.*, Dkt. No. 30-11 p. 17 (p. 57 of Trevino's deposition transcript); *Id*. p. 18 (p. 64 of Trevino's deposition transcript); *Id*. p. 19 (p. 68 of Trevino's deposition transcript); *Id*. p. 22 (p. 79 of Trevino's transcript); *Id*. pp. 21–22 (pp. 75–76 of Trevino's deposition transcript).

[82] Dkt. No. 30-1 ¶ 28; Dkt. No. 30-11 p. 12 (p. 38 of the deposition transcript); *Id*. p. 13 (p. 41 of Trevino's deposition transcript).

[83] Dkt. No. 30-11 p. 12 (p. 38 of Trevino's deposition transcript).

[84] *Id*. p. 13 (pp. 41–42 of Trevino's deposition transcript).

[85] *Id*. p. 23 (p. 84 of Trevino's deposition transcript).

[86] *Alanis v. Tracer Indus. Mgmt. Co., Inc.*, 2016 WL 7551073, at *12 (E.D. Tex. Aug. 1, 2016) (citing *McLaughlin*, 486 U.S. at 135).

[87] *Id*.

### ii.   *number of hours worked and moneys paid per week*

*Legal Standard*

The FLSA requires employers to pay their domestic servants minimum wage, which is currently $7.25 per hour.[88] In the domestic servant context, "the employer must include all time the employee is required to be on the premises or on duty and all time the employee is suffered or permitted to work."[89] Moreover, an FLSA plaintiff "has the burden to prove by a preponderance of the evidence that he worked hours for which he did not receive compensation."[90]

However, an FLSA defendant bears the burden to maintain adequate records of his employee's work hours and pay.[91] If the defendant fails to keep such records, the plaintiff can meet his initial summary judgment burden by producing "some evidence to show the amount and extent of that work as a matter of just and reasonable inference."[92] If the plaintiff meets his initial burden, it then shifts to the defendant to present evidence "to negative the reasonableness of the inference to be drawn from the employee's evidence."[93]

*Analysis*

Here, there is no evidence that Defendants kept any records of Plaintiff's work hours. Trevino in particular admits that she did not personally "have a system in place . . . to track the

---

[88] *See* 29 U.S.C.A. § 206(f) (West) (referring the reader to subsection (b), which refers the reader to subsection (a)(1), which provides for a minimum wage of $7.25).

[89] 29 C.F.R. § 552.101.

[90] *Ali v. RZS Investments, Inc.*, 2015 WL 12533093, at *2 (S.D. Tex. June 3, 2015).

[91] 29 U.S.C.A. § 211(c) (West) ("Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.").

[92] *Albanil v. Coast 2 Coast, Inc.*, 444 Fed. Appx. 788, 806 (5th Cir. 2011).

[93] *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 Fed.Appx. 448, 455 (5th Cir. 2009) (emphasis added).

hours [Plaintiff] would work in a day."[94] Consequently, Plaintiff can meet her initial burden by producing some evidence "of the amount and extent of her work as a matter of just and reasonable inference."[95] The only evidence concerning her work schedule is from Plaintiff's deposition wherein she testifies that:

> We would work from 5:00 in the morning to—to 2:00 or 3:00 in the morning. We would go to sleep, wake up, they would arrive at 2:00 or 3:00 in the morning, then they wanted chiliquines, they wanted breakfast, sleep for four or five hours, and then you—you wake up and you stay, you get up.[96]

With regard to hours, the Court infers from this statement that on at least some days, Plaintiff would work from 5:00 a.m. until 2:00 a.m. or 3:00 a.m.—*twenty-one to twenty-two hours*. With regard to wages, Plaintiff states elsewhere in her deposition that she was paid approximately *$180.00 every two weeks*.[97] However, Plaintiff fails to specify other crucial information, such as how many days a week she worked or whether twenty-hour days were an isolated occurrence or happened often. Without this information, it is difficult to infer how many hours Plaintiff worked per week, and thus whether she was ultimately paid at least $7.25 per hour. Plaintiff's lack of cognizable evidence as to the number of hours she worked on a weekly basis makes it similarly difficult to calculate what, if anything, Plaintiff is entitled to in unpaid minimum wage. Thus, Plaintiff has failed to carry her initial summary judgment burden.

Even assuming Plaintiff has carried her initial burden, Defendants put forth evidence which negatives the reasonableness of Plaintiff's deposition testimony with regard to her hours and wages. Armando and Trevino state in their affidavits that Plaintiff worked 25–35 hours per week,[98] ostensibly contradicting Plaintiff's assertion that she worked twenty-one to twenty-two

---

[94] Dkt. No. 23-2 p. 54.
[95] *Albanil*, 444 Fed. Appx. at 806.
[96] Dkt. No. 23-2 p. 36.
[97] *Id.* p. 31.
[98] Dkt. No. 30-2 ¶¶ 14 & 20; Dkt. No. 30-1 ¶¶ 16 & 23.

hours per day. Defendants also claim to have paid Plaintiff $290 per week (forty hours multiplied by $7.25) through a combination of cash payments and deposits into Plaintiff's Mexican bank account.[99] Thus, a genuine fact issue exists with regard to hours worked and wages paid per week.

Defendants' evidence negatives the reasonableness of inferences drawn from Plaintiff's evidence in other ways as well. Unlike Plaintiff's deposition testimony, Defendants' affidavits are *filled* with relevant information concerning what Plaintiff's responsibilities consisted of;[100] the number of days Plaintiff worked per week;[101] how many hours Plaintiff worked per week;[102] and how many hours Plaintiff worked per day, as well as how that number varied based upon Defendants' presence at or absence from their McAllen residence.[103] Defendants even note a specific exception to Plaintiff's normal work hours—a 2013 Christmas Eve celebration in which Plaintiff worked from 5:00 p.m. to 12:00 midnight.[104]

Defendants' affidavits also indicate that Plaintiff worked at Defendants' McAllen residence alongside at least two other "housekeepers," a cook, two personal assistants, (one of whom appears to have also served as a housekeeper),[105] and Armando's mother, who apparently took care of Defendants' children.[106] Plaintiff's statement that she worked twenty-one to twenty-two hours per day is unlikely in light of these facts; there could hardly be twenty-one to twenty-two hours of work to do per day at a single residence maintained by other helpers when the owners are often not present at the residence. Lastly, Defendants' affidavits indicate Plaintiff

---

[99] Dkt. No. 30-2 ¶ 5; Dkt. No. 30-1 ¶ 16.
[100] Dkt. No. 30-1 ¶¶ 6 & 18; Dkt. No. 30-2 ¶ 9.
[101] Dkt. No. 30-1 ¶ 5; Dkt. No. 30-2 ¶ 7.
[102] Dkt. No. 30-1 ¶ 16; Dkt. No. 30-2 ¶ 14.
[103] Dkt. No. 30-1 ¶¶ 10–11 & 19–20; Dkt. No. 30-2 ¶¶ 9–10.
[104] Dkt. No. 30-1 ¶ 11; Dkt. No. 30-2 ¶ 12.
[105] *See* Dkt. No. 30-1 ¶ 4; Dkt. No. 30-2 ¶¶ 8, 10, 13, 15.
[106] Dkt. No. 30-1 ¶ 6; Dkt. No. 30-2 ¶ 8.

never complained about her hours or pay,[107] something unlikely if she worked twenty-one to twenty-two hours per day for $180.00 bi-weekly.

Defendants also put forth evidence indicating that they are not the type of employers who would subject Plaintiff to unreasonable hours and pay, as suggested by Plaintiff. In particular, Trevino and Armando state in their affidavits that during Plaintiff's six-month term of employment in the United States, she was given three weeks of *paid* vacation to visit Mexico for a wedding, and to have eye surgery.[108] Moreover, Trevino and Armando state that, upon request, they advanced wages to Plaintiff in the amount of 15,000 pesos.[109]

In sum, Defendants' highly-specific, controverting evidence is sufficient to negative the *reasonableness* of the inferences to be drawn from Plaintiffs deposition testimony, particularly since the Court is bound to make any reasonable inferences in the non-movant's favor in the summary judgment context. Thus, Defendants have generated a genuine issue of material fact on the question of how many hours Plaintiff worked per week, how much she was paid bi-weekly, and thus whether she was paid minimum wage.

*Concerns Addressed*

Although Defendants' evidence gives rise to a couple of concerns, such concerns are not sufficient to grant Plaintiff's motion for summary judgment at this juncture. Defendants' evidence is clear that Plaintiff worked five days per week[110] and was paid "at least" $290 per week,[111] *which is exactly forty hours of minimum wage pay*. The logical consequence of these assertions is that if Plaintiff ever worked more than forty hours in a week, then she was not likely

---

[107] Dkt. No. 30-1 ¶ 28; Dkt. No. 30-2 ¶ 25; Dkt. No. 30-2 ¶ 18.
[108] Dkt. No. 30-1 ¶ 16.
[109] *Id*. The Court observes that this is over $800.00.
[110] Dkt. No. 30-2 ¶ 7.
[111] *Id*. ¶ 5.

paid what she was owed, because that amount would be more than $290.00 per week. Two particular pieces of Defendants' evidence create concerns on this point.

*First*, Armando suggests in one portion of his affidavit that when he and Trevino were at home, Plaintiff worked from 10:00 a.m. to 3:00 p.m., and then again from 5:00 p.m. to 8:30 p.m.—a total of eight and one-half hours per day.[112] Thus, if Plaintiff ever strung five such days of work together in one week, then she would have worked a total of forty-two and one-half hours, and would be owed more than $290.00 in minimum wage.

Nevertheless, the entirety of Defendants' remaining evidence suggests that Plaintiff never worked more than forty hours in a week, even when Armando and Trevino were at home. As previously noted, both Armando and Trevino's affidavits indicate that Plaintiff worked an average of twenty-five to thirty-five hours per week,[113] which would not be the case if Plaintiff worked over forty hours per day every day Armando and Trevino were at home. Moreover, Armando elsewhere states in his affidavit that when he and Trevino were at home, Plaintiff only worked six hours per day.[114] Trevino's affidavit indicates that when she and Armando were home, Plaintiff never worked more than six[115] to eight[116] hours in a day. In sum, a reasonable fact finder could find, despite the apparently conflicting evidence, that Plaintiff never worked more than forty hours per week.

*Second*, as previously noted, Defendants admit an exception to Plaintiff's normal work schedule—a 2013 Christmas Eve party in which Plaintiff worked from 5:00 p.m. to 12:00 midnight.[117] However, the evidence is not indisputably clear about the surrounding hours

---

[112] *See* Dkt. No. 30-2 ¶¶ 9–10.
[113] Dkt. No. 30-1 ¶¶ 16 & 23; Dkt. No. 30-2 ¶ 14 & 20.
[114] Dkt. No. 30-2 ¶¶ 18–19.
[115] Dkt. No. 30-1 ¶19.
[116] *Id*. ¶ 10.
[117] Dkt. No. 30-1 ¶ 11; Dkt. No. 30-2 ¶ 12.

Plaintiff worked *that particular week*. For example, Defendants' affidavits indicate that from November 2013 to January 2014, Plaintiff only worked an average of twenty-five to thirty-five hours.[118] Based on this evidence, it is possible Plaintiff's combined hours during the Christmas Eve[119] week did not exceed forty hours. Thus, a reasonable fact-finder could find, based on the available evidence, that despite the Christmas Eve anomaly, Plaintiff never worked more than forty hours per week, and was thus always paid the minimum wage she was owed each week— $290.00.  In sum, a fact issue exists concerning whether Plaintiff was paid all the minimum wage she was owed. Thus, Plaintiff's motion for summary judgment on her FLSA claim is **DENIED**.

*Breach of Contract*

For precisely the same reasons, Plaintiff's motion for summary judgment on her breach of contract claim must be denied. The third element of a breach claim in Texas is breach of a contractual duty.[120] The import of Plaintiff's claim is that Defendants breached the employment contract by failing to pay Plaintiff minimum and overtime wages.[121] However, as noted, fact issues exist with regard to the number of hours Plaintiff worked, how much she was paid, and thus ultimately, whether Plaintiff was paid minimum wage and overtime. In effect, a fact issue exists on the third element of Plaintiff's breach claim—breach of a contractual duty. Consequently, Plaintiff's motion for summary judgment on her breach of contract claim is **DENIED**. The Court notes that although Plaintiff pleads quantum meruit/unjust enrichment in

---

[118] Dkt. No. 30-2 ¶ 14.

[119] The Court takes judicial notice that Christmas Eve of 2013 was a Tuesday, and thus Plaintiff's help at the party did not likely add work day to her work week.

[120] *See Scherff v. S. Tex. Coll.*, 2017 WL 3783042, at *7 (S.D. Tex. Aug. 29, 2017) (citing *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009).

[121] *See* Dkt. No. 23 p. 10 ("Defendant Trevino Ruiz breached her contract with Plaintiff. Defendant contracted to pay Plaintiff the federal minimum hourly wage of $7.25. Plaintiff's salary never approached this level."); *Id.* p. 11 ("Defendant also breached her promise to pay Defendant 150% of the federal minimum wage for each hour she worked past 40 hours every week. As noted above, Plaintiff received the equivalent of 5,000 Mexican pesos each week, regardless of the hours she put in.").

the alternative, she does not mention these alternative claims in her motion for summary judgment, and thus has not moved for summary judgment on them.

### iii.     Whether Amelia is an "employer" for FLSA purposes

*Legal Standard*

As noted, the FLSA requires *employers* to pay their domestic servants minimum wage, which is currently $7.25.[122] "Employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee."[123] The Fifth Circuit has adopted the "economic reality" test for determining whether an individual defendant counts as an "employer" for FLSA purposes. Courts specifically consider whether the alleged employer "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."[124] Although "each element need not be present in every case, finding employer status when none of the factors is present would make the test meaningless."[125]

*Analysis*

Here, a fact issue exists concerning whether Amelia was Plaintiff's employer for FLSA purposes. Plaintiff does not point to any evidence, nor can the Court identify any, suggesting Amelia had the power to fire Plaintiff or that Amelia determined Plaintiff's wages or maintained any employment records. In fact, the available evidence suggests otherwise. With regard to *the power to hire and fire employees*, Plaintiff's own declaration indicates that only Armando extended an offer of employment, and thus presumably had the power to fire Plaintiff.[126]

---

[122] *See* 29 U.S.C.A. § 206(f) (West) (referring the reader to subsection (b), which refers the reader to subsection (a)(1), which provides for a minimum wage of $7.25).
[123] *Id.* § 203(d) (West).
[124] *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012).
[125] *Id.* p. 357.
[126] Dkt. No. 23-2 p. 18.

Armando also hired Plaintiff's daughter.[127]  With regard to *determining the rate and method of payment*, the record is largely silent. However, it is clear that Armando ensured that Plaintiff was paid.[128]  Armando was also the person to ask for any advancements.[129]  With regard to *maintenance of employment records*, the record is also mostly silent. However, it appears that Armando maintained all paperwork on important matters, especially of a legal nature.[130] Thus, three of the four factors weigh against finding that Amelia is an "employer" for FLSA purposes.

The final factor— supervising and controlling employee work schedules or conditions— is unclear. Amelia states in an affidavit that she would "from *time to time* communicate with [Plaintiff] on behalf of [Trevino] and [Armando] regarding [Plaintiff]'s daily cleaning responsibilities and then cooking responsibilities as well as her work schedule."[131] However, the rest of the record suggests that Amelia played—at most—a negligible role in determining Plaintiff's work schedule and duties. Plaintiff herself testified that Armando set her work schedule.[132] Moreover, Trevino states in her affidavit that Armando "was responsible for ensuring that the housekeepers were fulfilling their duties and keeping their work schedules."[133] Armando also states in his affidavit that he supervised Plaintiff and other members of the house staff, and also that his responsibilities "included determining their work schedules[,] . . . assigning their work responsibilities, and monitoring the hours they worked."[134]

Thus, at an absolute minimum, the evidence creates a fact issue with regard to whether Amelia was Plaintiff's employer for FLSA purposes. Three of the four considerations weigh

---

[127] *Id*. p. 26.
[128] Dkt. No. 30-2 ¶ 9.
[129] Dkt. No. 30-4 ¶ 10.
[130] Dkt. No. 30-11 p. 13 ("All of the documents, all the legal documents, the paperwork, the insurance, taxes, my husband manages all of that.").
[131] Dkt. No. 30-3 ¶ 4 (emphasis added).
[132] Dkt. No. 23-2 p. 35.
[133] Dkt. No. 30-1 ¶ 9.
[134] Dkt. No. 30-2 ¶ 3.

against such a finding, and the fourth factor is at best neutral. Thus, Plaintiff's motion for summary judgment on her FLSA claim against Amelia in particular is **DENIED**.

**IV.** **HOLDING**

For the forgoing reasons, Plaintiff's motion for partial summary judgment is **DENIED**. Additionally, docket number twenty-nine is **STRICKEN** as duplicative.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 29th day of September, 2017.

_____
Micaela Alvarez
United States District Judge